## GRANT *v.* HAYMES.

</div>

1. Where the owner of a described tract of land agreed to sell the same, and in pursuance of the contract of sale, on January 23, 1909, executed to the buyer his bond for title, in which there was this provision: "There is a sand bank on the property to be conveyed, said sand bank being on the west side of the road extending from Chattanooga to Blowing Springs, and the right is reserved to remove all of the said sand in said bank up to the north boundary line of the property to be conveyed, and as far west as sand may extend, together with the right to remove timber growing over said sand bank, so as to the better enable him to get the sand;" and where, on January 23, 1914, the executrix

and sole legatee of the grantor, pursuant to his bond, conveyed said land to the grantee, with the same reservation of said sand as that contained in the bond for title, such reservation was more than a mere license to the grantor to remove said sand, but was a reservation of the title to the sand in the grantor.

2. It is competent for the owner of land to convey the fee therein to another, and reserve the right to the sand in a sand bank thereon.

(*a*) Strictly speaking, a reservation is a clause in a deed or other instrument, whereby the grantor reserves to himself some new thing issuing out of the thing granted and not in esse before, and differs from an exception, which is always a part of the thing granted.

(*b*) But the terms "exception" and "reservation" are often used in deeds indiscriminately, and sometimes what purports to be a reservation has the force of an exception. In cases where the intention is the controlling consideration, the distinction of the common law between reservation and exception is not material.

(*c*) Under the bond for title referred to in the first headnote, the vendor agreed to sell to the vendee the land therein described, but reserved to himself the title to the sand in the sand bank thereon; and by the conveyance by the executor of the maker of the bond for title, in pursuance thereof, title to said sand was reserved in the vendor, or his estate.

3. The right or title to the sand did not terminate with the death of the grantor.

(*a*) The reservation of the sand was not a mere license which was revoked by the death of the grantor.

(*b*) While by the common law this reservation would only create a life-estate in the sand in the grantor, because of lack of words of inheritance, under our statute, which dispenses with words of inheritance, and which declares that every conveyance shall be construed to convey the fee, this reservation, even if given its strict common-law meaning, reserved to the grantor a fee in this sand; and if the term "reservation" is treated as an exception, the effect of such reservation was to reserve in the grantor the fee in the sand, which would pass to his heirs in case of his intestacy, or to his devisee thereof when he died testate.

4. Under the language in which this reservation is couched, the grantor, his heirs or devisees, did not have unlimited time in which to reserve this sand, but the same should be removed in a reasonable time; and upon the failure of the grantor, or those claiming under him, to remove it within a reasonable time, the right or title to the sand would be divested.

(*a*) What is a reasonable time in which this sand should be removed is a question of fact, under all the circumstances, to be determined by a jury. Except in extreme cases, where the period is very short or very long, this court can not determine, as a matter of law, whether the reasonable time in which the grantor or those claiming under him should remove this sand has or has not expired.

(*b*) While considerable time elapsed between the execution of the bond for title in 1909, and the execution of the executor's deed in 1914, and the filing of the petition in this case in 1924, this court can not say as a matter of law that a reasonable time for the removal of this sand had

expired before the institution of this suit, but it is a question of fact for determination by a jury.

5. Plaintiff alleges in her petition that she has title to this sand as sole devisee under the will of the grantor. The demurrer admits this to be true. So it can not be said that the petition fails to show title in the petitioner. In an equitable complaint for land or some interest therein, the plaintiff is not required to set out in her petition the muniments of title under which she claims title, nor to attach copies thereof to her petition.

6. The court below erred in sustaining the demurrer to the petition, and in dismissing the same.

<div align="center">No. 5756.  June 22, 1927.</div>

Complaint for land. Before Judge Maddox. Walker superior court. November 17, 1926.

Elizabeth Post Grant filed her petition against N. B. Haymes, in which she made these allegations: Haymes is in possession of a described tract of land, in Walker County, this State. Petitioner claims title to all of the sand on a sand bank on the west side of the road extending from Chattanooga to Blowing Springs, together with the right of ingress and egress over the described lands to remove said sand from said sand bank, up to the north boundary line of the property described, and as far west on said property as said sand may extend, together with the right to remove timber growing over said bank so as to better enable the removal of said sand. Haymes refuses to deliver possession of said land to petitioner, or to pay her the profit of the said sand bank. Haymes holds said described land under a contract of purchase from the husband of petitioner, who, on January 23, 1909, contracted to sell the same to him, and issued to him on said date his bond for title thereto, which contained this provision: "There is a sand bank on the property to be conveyed, said sand bank being on the west side of the road extending from Chattanooga to Blowing Springs, and the right is reserved to remove all of the said sand in said bank up to the north boundary line of the property to be conveyed, and as far west as sand may extend, together with the right to remove timber growing over said sand bank, so as to the better enable him to get the sand." Said sand bank is a part of the described land, being located on parts of lots Nos. 3 and 4 in the 9th district and 4th section of said county. Pursuant to said bond for title, which will be produced on the hearing of this case, petitioner on January 23, 1914, as executrix of and sole legatee

under the will of her husband, made a deed to Haymes to the described tract of land, and in said deed made the same reservation of said sand bank as above set forth, describing the same as a part of the described land, located on the west side of the Chattanooga and Blowing Springs road, and being a part of lots Nos. 3 and 4 in said district and section, the acres through which sand goes petitioner can not yet determine.

Until 1923 petitioner did not know that the defendant was claiming adversely to her and those under whom she holds. Said sand bank is the property of petitioner, and she is entitled to and should have the right of ingress and egress to said sand bank. Petitioner should recover and have possession of said premises described, but recently and during the last year the defendant erected a locked gate, as described in the drawing attached to the petition and made a part thereof, and has forbidden her from entering upon the premises and getting the sand that belongs to her and from entering said premises at all, and has maintained the said gate, locking her out of said premises for more than twelve months, and refuses to deliver said premises to her, or to pay her the profit thereof, and she is legally the owner of the same. The defendant is claiming under the same source of title as petitioner. Petitioner and her predecessors in title were in the open, notorious, peaceable, actual, and adverse possession of this tract of land, and other contiguous lands, for more than forty years before said lands were sold to the defendant. She has not aliened and released any rights to said sand bank, and is entitled to the same under the law. Since said bond for title was made her husband departed this life, leaving a will under which petitioner became the executrix and sole legatee, and owner in her right of all the lands or property left by her husband, who died May 26, 1912, and whose will was properly probated in the court of common pleas in Chattanooga, Tennessee, on June 3, 1912. Copies of the proceedings to probate said will, together with copy of the will, will be produced on the trial of this case. Said sand is located on the highway in said county, is near Chattanooga, Tennessee, is valuable, and petitioner is entitled to the same, and to have said sand withheld from her is materially damaging her. Said sand bank and gate aforesaid are on the west side of the road described, and is located on or about the north and south line running be-

tween lots 3 and 4 in said district and section, and is fairly accurately described in the drawing which is made a part of the petition. Petitioner prayed to recover the sand in said sand bank, together with the right to enter upon the described lands for the removal of said sand, and the right to remove timber from said sand bank, in order to enable the sand to be removed, that the defendant be required to permit plaintiff to enter upon said lands for the removal of said sand, and be enjoined from interfering with her in the removal of said sand by fences, barriers, or in any other way.

The defendant demurred generally upon the grounds, (a) that the petition sets forth no cause of action, and (b) that the petition is too vague, indefinite, and uncertain, and alleges no facts with sufficient certainty to inform him what and how to answer the same. He demurred specially upon the grounds: (a) that said reservation was one personal to the husband of petitioner, on which she can not maintain this suit; (b) that said reservation is only an incumbrance upon said property in favor of the deceased, and his heirs and legatees can not maintain this suit; (c) that said reservation does not retain title, and is only a covenant in favor of the deceased; (d) that so much of said petition as alleges that petitioner is the owner of said sand bank, or that said sand bank is her property, and that she is entitled and should have the right of ingress and egress, should be stricken; and (e) because there is no allegation that petitioner is injured and damaged, and no right of action has accrued, and because the prayer for relief does not specify what judgment, verdict, or decree plaintiff is entitled to. The court sustained the demurrer and dismissed the petition. To this judgment the plaintiff excepted. Attached to plaintiff's petition was the following drawing:

*Rosser & Shaw,* and *McClure & McClure,* for plaintiff.

*Henry & Jackson* and *R. M. W. Glenn,* for defendant.

HINES, J. (After stating the foregoing facts.)

1. H. W. Grant, the husband of plaintiff, on January 23, 1909, contracted to sell to N. B. Haymes a described tract of land, and executed and delivered to him on said date his bond for title thereto, which contains this provision: "There is a sand bank on the property to be conveyed, said sand bank being on the west side of the road extending from Chattanooga to Blowing Springs, and the right is reserved to remove all of the said sand in said bank up to the north boundary line of the property to be conveyed, and as far west as sand may extend, together with the right to remove timber growing over said sand bank, so as to the better enable him to get the sand." On January 23, 1914, Elizabeth Post Grant, the wife of H. W. Grant, as executrix of and sole legatee under his will, in pursuance of said bond for title conveyed said land to Haymes, and in her deed of conveyance made the same reservation of the sand in said sand bank as that contained in the bond for title from her husband to said vendee. It is insisted by counsel for Haymes that the above reservation is a mere license from Haymes to Grant, to remove the sand from this land, and that it is a personal privilege given to Grant, and is therefore not

assignable. We do not think that this reservation is a mere personal privilege or license. A license, as a term of real-estate law, is an authority to do a particular act or series of acts upon another's land, without possessing any estate therein. *Augusta & Savannah R. Co.* v. *Augusta Southern R. Co.,* 96 *Ga.* 562 (23 S. E. 501) ; 13 Am. & Eng. Enc. Law (1st ed.), 539, 544; 25 Cyc. 640, 644; 27 Cyc. 690. In other words, a license in respect of real estate is an authority given by the owner to another to do a particular act or series of acts upon his land, without the grant to the licensee of any estate or interest in the land. We think this reservation is more than a license. The owner, having title to this land, in selling the same, under the reservation reserved the right or title to the sand in a certain sand bank on the land. In other words, the owner, in selling this tract of land, reserved to himself the title to this sand, and the right to remove the same from the land. · So we can not treat this reservation as a mere license or personal privilege.

2. It is competent for one to convey the fee in land to another and reserve the right to sand in a sand bank thereon. In *Holmes* v. *Martin,* 10 *Ga.* 503, 506, this court said: "It is competent for one to convey the fee to another and reserve the right of mining, of common, of waterway, with the power of entry, for the purpose of making, opening, or cleansing watercourses, or the right of entry for making reservoirs, or of planting ladders for the repair of adjoining houses, or the right of sporting." It is always competent for the vendor to convey the fee in land to the vendee, and to except therefrom some part of the land conveyed, or to reserve to himself, his heirs and assigns, certain rights in the land. Strictly speaking, a reservation is that which issues from or is an incident of a thing granted, and not a part of it. It is something newly created out of the granted premises. It is a clause in a deed whereby the grantor reserves some new thing to himself, issuing out of the thing granted and not in esse before. It differs from an exception, which is always a part of the thing granted, and of the thing in being at the time of the conveyance. The office of an exception is to take something out of the thing granted, that would otherwise pass. 18 C. J. 340, § 339, notes 95 and 96, and decisions therein cited. This distinction between these terms has been generally recognized. "The terms exception and reserva-

tion are often used in deeds indiscriminately, and sometimes what purports to be a reservation has the force of an exception." *McAfee v. Arline,* 83 *Ga.* 645 (10 S. E. 441). The technical meaning will give way to the manifest intent, although the technical term to the contrary is used. The modern tendency of the courts has been to brush aside these fine distinctions, and look to the character and effect of the provision itself. Moore v. Griffin, 72 Kan. 164, 166 (83 Pac. 395, 4 L. R. A. (N. S.) 477). The use of the word "reserve" does not necessarily create a technical reservation. The deed in which this term is used may, nevertheless, operate as an exception. The construction of the deed in which this term is used is to be drawn from the circumstances of each case, and from the words of the instrument, the object being to ascertain and give effect to the intention of the parties. Gill v. Fletcher, 74 Ohio St. 295, 304 (78 N. E. 433, 113 Am. St. R. 962). In such cases, where the intention is the controlling consideration, the distinction of the common law between reservations and exceptions is not material. Coal Creek Mining Company v. Heck, 15 Lea (Tenn.), 497. So we are of the opinion that the vendor in this case sold to the vendee this land, but reserved to himself the title to the sand in the sand bank thereon.

3. But it is insisted that the right or title to this sand ter-. minated with the death of the grantor. This contention is based upon two theories. One is that the reservation was a mere license, and that the death of either party works a revocation of the license. 25 Cyc. 651 (d). The other is that where the reservation does not contain words of inheritance, it exists only for the life of the grantor. This undoubtedly is the rule where the common law prevails. By the common law, a conveyance to a vendee, without words of inheritance, created in the vendee only a life-estate, no matter how clear it was that the vendee intended to convey an estate in fee simple. Applying this rule, the courts have held that a reservation in a conveyance operates by way of an implied grant, and in the absence of words of inheritance, only an estate for the grantor's life is created. 3 Washburn on Real Property (5th ed.), 465; Lathrop v. Elsner, 93 Mich. 599 (53 N. W. 791); Marvin v. Brewster Iron Mining Co., 55 N. Y. 538 (14 Am. R. 322); Sloan v. Lawrence Furnace Co., 29 Ohio St. 568; Whitaker v. Brown, 46 Pa. 197; Foster v. Runk, 109 Pa. 291 (58 Am. R. 720);

Hall *v.* Hall, 106 Me. 389 (76 Atl. 705); Mandle *v.* Gharing, 256 Pa. 121 (100 Atl. 705); Field *v.* Morris, 88 Ark. 148 (114 S. W. 206); Worcester *v.* Smith, 117 Me. 168 (103 Atl. 65); 18 C. J. 342 (§ 340), 343. By our act of 1821, the word "heirs" or its equivalent is not necessary to create an absolute estate; but every conveyance, properly executed, shall be construed to convey the fee, unless a less estate is mentioned and limited in the conveyance. "The word 'heirs,' or its equivalent, is not necessary to create an absolute estate; but every conveyance, properly executed, shall be construed to convey the fee, unless a less estate is mentioned and limited in such conveyance. If a less estate is expressly limited, the courts shall not, by construction, increase such estate into a fee, but, disregarding all technical rules, shall give effect to the intention of the maker of the instrument, as far as the same is lawful, if the same can be gathered from its contents; and if not, in such case the court may hear parol evidence to prove the intention." Cobb's Digest, 169; Civil Code (1910), § 3659. So as a reservation is a grant by implication of a thing reserved, words of inheritance are no longer necessary to convey an estate in fee simple to the grantor. In the case of an exception, words of inheritance are not necessary to retain the title for the grantor and his heirs. Worcester *v.* Smith, supra; Negaunee Iron Co. *v.* Iron Cliffs Co., 134 Mich. 26 (96 N. W. 468); Mandle *v.* Gharing, supra. Whatever is excluded from the grant by exception remains in the grantor by virtue of his former title or right. Stockbridge Iron Co. *v.* Hudson Iron Co., 107 Mass. 290, 321; 18 C. J. 342 (§ 340, 2).

So whether the provision in the bond for title from Grant to Haymes, and in the deed from the executrix of the former to the latter, constitutes a strict reservation or an exception, makes no difference in this case. We have seen that a reservation often amounts to an exception, and the word "reservation" is often used in the sense of the word "exception." It can with much plausibility be maintained that the provision in these instruments created properly an exception, and not a reservation. However, as we have just stated, this makes no difference in the present case. If the language of this provision in these instruments creates a reservation, we have seen that a reservation is a grant by implication, and under our statute will convey an estate in

fee simple without words of inheritance. Furthermore, under our statute, such a grant must be held to be one in fee simple, unless a lesser estate is expressly mentioned and limited. From what we have said it follows that under the provision in these instruments the title to this sand, if the provision amounts to an exception, remained in the grantor, and would pass to his heirs; and if such provision amounted to a technical reservation, the reservation being a grant by implication, the title to this sand passed to the grantor and would go to his heirs, if he died intestate, or to such person as he might devise it in his will.

4. While we hold that under this reservation or exception the title to this sand remained in the grantor under his bond for title, and passed to his heirs if he died intestate, or to his devisees if he died testate, we do not mean that the grantor, his heirs or devisees, had an unlimited time in which to remove the sand in this sand bank. The language in which this reservation or exception is couched clearly indicates that the grantor was to remove all of the sand in said sand bank. The language is: "The right is reserved to remove all of the said sand in said sand bank up to the north boundary line of the property to be conveyed, and as far west as sand may extend, together with the right to remove timber growing over said sand bank, so as to the better enable" the grantor "to get the sand." Clearly it was in the contemplation of the parties that the grantor or those claiming under him should remove the sand from this sand bank. No time limit is fixed by the bond for title, or the deed from the executor of the grantor, in which the sand was to be removed. In these circumstances we think the sand should be removed within a reasonable time, and that upon the failure of the grantor, or those claiming under him, to remove it within a reasonable time, the right or title to the sand would be divested. In *Morgan* v. *Perkins,* 94 *Ga.* 353, 355 (21 S. E. 574), it was held that "The timber being realty, the purchaser acquires by the written conveyance an interest in the land, subject to be divested if he fails to remove the timber within the time limited by the conveyance. This is a limitation upon the estate granted; and if the timber is not removed within the time prescribed in the limitation, the estate terminates." In *Perkins Manufacturing Co.* v. *Williams,* 98 *Ga.* 388 (25 S. E. 556), it was held that an instrument in the form of a deed, conveying

all the timber and logs suitable to be manufactured into cross-ties on a described tract of land, and providing that the contract should expire after twelve months from its date, did not pass to the purchaser absolute title, and that on failure of the purchaser to convert the timber and logs into cross-ties within the time limit mentioned, his title to the timber and logs terminated. Where a deed conveys the timber on land, and makes no mention of the time within which to remove it, the vendee has a reasonable time within which to remove the timber. *McRae* v. *Stillwell,* 111 *Ga.* 65 (36 S. E. 604, 55 L. R. A. 513); *Goette* v. *Lane,* 111 *Ga.* 400 (36 S. E. 758); *Allison* v. *Wall,* 121 *Ga.* 822 (49 S. E. 831); *Shippen Lumber Co.* v. *Gates,* 136 *Ga.* 37 (70 S. E. 672); *Howell* v. *Clements,* 139 *Ga.* 441 (77 S. E. 564). We have seen that the language in the bond for title and the executor's deed, under which the plaintiff claims title to this sand, if treated as a reservation, by implication grants to the maker of the bond for title the title to this sand, the reservation of the right to remove the sand in effect being a reservation of title thereto. If this language constitutes an exception, then the title to the sand remained in the grantor. But it was clearly within the contemplation of the parties that the grantor, or those claiming under him, were to remove this sand. As no time was specified in this instrument in which this was to be done, then the sand should be removed within a reasonable time. What is a reasonable time in which this should be done is a question of fact, under all the circumstances, to be determined by a jury. *McRae* v. *Stillwell, Goette* v. *Lane,* and *Allison* v. *Wall,* supra. Except in extreme cases, where the period is very short or very long, the court can not determine, as a matter of law, whether the reasonable time, in which the grantor or those claiming under him should remove this sand, has or has not expired. *Brinson* v. *Kirkland,* 122 *Ga.* 486 (50 S. E. 369).

5. But it is insisted by counsel for the defendant that the plaintiff does not show, under the allegations of the petition, that she has title to this sand, and that for this reason her petition sets forth no cause of action. This contention is based, first, upon the ground that this sand is not real estate, and that for this reason the plaintiff can not recover as an heir at law of the obligor in the bond for title. This court has held that standing timber is not personalty but realty, and that a sale of growing trees is a

sale of an interest in land. *Coody* v. *Gress Lumber Co.,* 82 *Ga.* 793 (10 S. E. 218); *Balkcom* v. *Empire Lumber Co.,* 91 *Ga.* 651 (17 S. E. 1020, 44 Am. St. R. 58); *Morgan* v. *Perkins,* supra. If timber on land is realty and not personalty, it seems clear that a sand bank upon land is realty and not personalty. But we concede that the plaintiff can not recover in this case as heir at law of the obligor in the bond for title, for the sufficient reason that she is not asserting title to this land as an heir at law of her husband, who is the obligor in said bond for title. On the contrary she asserts that her husband died testate, in the State of Tennessee, and that his will was probated in the proper court of that State. She further alleges that she is the sole legatee, and that she claims title to said land under the will. Here she alleges title in herself to this sand under this probated will. In view of this allegation, we can not say that she has not asserted title to the land, and that for this reason she makes out no case. It is not necessary that the plaintiff in ejectment or complaint for land, or in an equitable proceeding asserting title to this sand, should set out in her petition or attach thereto the muniments of title under which she claims. When she alleges title in herself to the property in dispute, the demurrer admits the truth of such allegation. So we can not hold that there is a failure in the petition to assert or show title to this sand in the plaintiff, and that for this reason the demurrer should have been sustained to the petition. Whether the plaintiff can sustain an allegation of title by proper proof depends upon her proof of title; and whether, if she makes such proof of title, the same has been divested by her failure to remove this sand within a reasonable time, is a question of fact to be finally determined by a jury, under all the facts and circumstances of the case.

6. Applying the above principles, we think that the court erred in sustaining the demurrer to the petition, and in dismissing the same. *Judgment reversed. All the Justices concur.*