### HARRELL *v.* WILLIAMS & SONS *et al.*

1. Where the owner of timber and the owners of a sawmill, on January 10, 1922, entered into an agreement in writing, whereby the former agreed "to sell all of the pine timber on a described tract of land for the sum of one dollar and fifty cents per thousand" feet to such mill-owners, and where the latter paid to the former on said timber the sum of fifty dollars in cash, and were to pay the balance of the purchase-price as the timber was cut, at one dollar and fifty cents per thousand feet, the owner of the timber granted to the owners of the mill the right to cut and remove this timber.

(*a*) The right to cut and remove the timber not being a mere license resting in parol, but being in writing and for value, the licensee stands upon the footing of a purchaser for value, and the right or license is not revocable at the will of the grantor.

(*b*) No time being specified in which the timber was to be cut and removed, it was incumbent upon the defendants to cut and remove the same within a reasonable time from the date of the instrument, and upon their failure to do so their interest would cease and determine.

(*c*) What would be a reasonable time for so doing was a question of fact to be decided in the light of all the facts and circumstances of the transaction.

2. If there had been originally any want of mutuality, it was cured by

the filing of the answer of the defendants, in which they set up and assert their right to cut and remove this timber.

(a) The trial judge did not err in finding that the defendants had not forfeited their right to cut and remove this timber by their delay, under the facts and circumstances disclosed in the record.

(b) The court below did not err in the admission of the evidence complained of.

(c) Under the view which we take of this case, it is unnecessary to determine whether a case for reformation was made under the pleadings and evidence in the record.

3. The court did not err in refusing to grant an injunction on the ground that the maker of the contract under which the defendants claim the timber in dispute was mentally incapable of executing it, the evidence, when taken most favorably to the plaintiff, being contradictory.

4. Applying the above principles, the court below did not err in refusing to grant an injunction.

　　　　　　No. 4490.　NOVEMBER 13, 1924.

Petition for injunction. Before Judge Graham. Telfair superior court. July 12, 1924.

Carrie Clyde Harrell filed her petition for injunction and relief against B. W. Williams & Sons, and made these allegations: On January 10, 1922, J. L. Parker owned land lot No. 326 in the 9th district of Telfair County, Georgia. On said date he entered into a contract with the defendants, of which the following is a copy:

"Georgia, Dodge County. This agreement made and entered into this the 10th day of January, 1922, between J. L. Parker, party of the first part, and B. W. Williams and Sons, party of the second part, of the County of Telfair. Witnesseth, that the said J. L. Parker, party of the first part, by these presents agrees to sell all the pine timber on lot of land No. 326' three hundred and twenty six in the ninth district of Telfair County, Georgia, to B. W. Williams & Sons of said County for the sum of one dollar and fifty cents per thousand. Said B. W. Williams & Sons have this day paid to J. L. Parker fifty dollars in cash, and the balance to be paid as the timber is cut, at one dollar and fifty cents per thousand feet. Said B. W. Williams and Sons to have the privilege to put his sawmill on said lots of land, and to keep his teams on said lots, and to all mill privileges to get his lumber off. Witness my hand and seal of the party of the first part." Signed by J. L. Parker.

Petitioner claims title to said land under J. L. Parker. The defendants are preparing to enter upon said land, place thereon a sawmill, and intend immediately to begin cutting and removing

pine timber therefrom. J. L. Parker died intestate in October, 1923. There has been no administration upon his estate. Petitioner is his only child and heir at law. On June 18, 1923, he executed and delivered to her a deed conveying said land to her in fee simple. The contract between him and defendants is null and void. It is a mere option whereby the defendants are given the right to acquire an interest in the pine timber on said land, and they failed to exercise the option by contracting and agreeing to pay the price named in the contract at any time prior to the bringing of this suit. At the time of the making of the contract Parker had not sufficient mental capacity to make it; he was mentally incapable of understanding its nature and its terms. It was obtained by fraud and duress, because at the time it was made Parker was in extremely bad physical condition, being then and there afflicted with an incurable cancer of the face, which finally caused his death. Being conscious of the effect of said disease, and knowing his incapacity to give proper attention to his business affairs, he always called on petitioner to assist him and to make all settlements. He would not make payment of his own taxes, but always requested his brother, John Parker, to go with him and see that the taxes were properly paid and discharged. He sold his cotton and produce through the husband of petitioner. In his weakened condition of body and mind he was afraid of the defendant B. W. Williams, saying that B. W. Williams was a man of violence and would do harm to people who opposed his will. Before making said contract Parker had sold to a negro 100 cross-ties for $25; but upon B. W. Williams expressing a desire for the ties, Parker required the negro to give back his claim for them, and sold them to Williams for $20. Said Parker had not been in the habit of going to Rhine, Ga., having been there only once before the date of said contract in five or ten years.

On January 10, 1922, petitioner was sick and confined to her bed. She and her husband were then living with her father. On that date B. W. Williams carried her father to Rhine, Ga., for the purpose of procuring the making of said contract, and apparently to get him away from his friends and relatives who could advise him. With full knowledge of the facts hereinbefore stated, he procured her father to make the contract. At that time the timber was worth $5 per thousand. Prior to that time her father

had always been making his deals for cash, refusing to take checks, or otherwise deal on credit; and said contract is entirely contrary to his method of doing business. The defendants failed to exercise the option given them by said contract within a reasonable time, and to bind themselves to cut said timber and pay the price of $1.50 per thousand; and said option expired. If said contract be construed as conferring upon defendants the right to cut the pine timber on said land, said right has expired because a reasonable time therefor had already expired before the filing of this petition. The defendants were then, and are still, engaged in cutting timber with a sawmill which they own; and the timber, amounting to about 300,000 feet, could have been reasonably cut and removed by them within a period of six months or less from the date of the contract. Said contract is a cloud upon petitioner's title, and she is in possession of said land. The contract is apparently ambiguous as to its terms, in not defining the rights attempted to be dealt with, so that a construction might be placed thereon allowing defendants to turpentine the trees and cut and remove all the pine timber without regard to size, if it is allowed to be carried out by defendants as they contemplate and claim the right to do, which would produce irreparable damage to petitioner. If the timber is cut, the damage to her will be irreparable because no pine timber will be left upon said land sufficient for farm purposes, and the value of her land will be greatly decreased. It is impossible to estimate with accuracy the value of said timber. Petitioner has no knowledge whether the $50 named in said contract was paid, and construes said contract as an option; but if the court should construe it not to be an option, and it should appear that said $50 was paid, petitioner stands ready to pay to defendants said $50 with interest. She prays that the defendants be enjoined from cutting said timber, and that the contract be decreed to be void, and be canceled as a cloud upon her title.

In their answer the defendants alleged that from lack of information they could neither admit nor deny the allegations of the petition that petitioner was the sole heir at law of said Parker, that there was no administration upon his estate, and that said Parker conveyed to petitioner said land by a deed in fee simple. They admitted the execution of said contract and that they intended to cut said timber thereunder. They denied the other substantial

allegations of the petition. They further set up that at the time said contract was made they were engaged in sawing timber at a location on Horse Creek in Telfair County, that they contemplated that it would take three years or more to cut said timber at said location, that this was known to Parker at the time he made said contract, that plaintiff knew all about the negotiations which led up to said contract, and that the terms and conditions had been agreed upon by them and Parker prior to the execution of said contract. They further alleged that one of the terms of the agreement was that the cutting of said timber should be begun by them when they finished the manufacture of the timber at their location on Horse Creek, that this provision of the contract was stated to one Ryals, who acted for both parties in drawing said instrument, and that Ryals advised them that it was not necessary to put the same in the instrument, on which advice defendants acted. This was a mistake of law and fact on the part of the scrivener and a mutual mistake of law and fact on the part of the parties to the contract; for which reason they prayed to have said agreement so reformed as to embrace this provision, if this was necessary to make the contract valid.

On the hearing of the application for injunction the plaintiff introduced evidence tending to prove the allegations of the petition. The defendants introduced evidence tending to disprove the allegations of the petition, and to prove those of the answer. The court refused to grant a temporary injunction, to which judgment plaintiff excepted. The court permitted the scrivener to testify, over objection, that it was agreed between the parties to the contract that the cutting of the timber should commence when defendants had cut their timber at Horse Creek, that the question arose as to whether or not this time should be stated in the lease, and that he advised the parties that it was not necessary; for which reason he did not incorporate such time in the written agreement. To this ruling petitioner excepted on the ground that there was no evidence authorizing the finding that there had been a mistake of law and fact on the part of defendants, and that the court erred in admitting said evidence over objection, when it contradicted the written contract.

*L. C. Harrell* and *Hal Lawson,* for plaintiff.

*W. S. Mann,* for defendants.

HINES, J. (After stating the foregoing facts.)

1. Under the view we take of this case, it is unnecessary to decide whether the written instrument under which the defendants claim conveyed to them absolute title to the timber on the land described therein. The maker of this instrument clearly granted to the defendants a license to cut and remove this timber. *Baxter v. Mattox,* 106 *Ga.* 344 (32 S. E. 94); *Perkins* v. *Peterson,* 110 *Ga.* 24 (35 S. E. 319); *Johnson* v. *Truitt,* 122 *Ga.* 327 (50 S. E. 135); *North Georgia Co.* v. *Bebee,* 128 *Ga.* 563 (57 S. E. 873); *Lott* v. *Denton,* 146 *Ga.* 363 (91 S. E. 112). The right to cut and remove this timber, not being a mere license resting in parol, but being in writing and for value, the licensee stands upon the footing of a purchaser for value, and the right or license is not revocable at the will of the grantor, his heirs or assigns. Civil Code (1910), § 3645; *Hiers* v. *Mill Haven Co.,* 113 *Ga.* 1002 (39 S. E. 444). No time being specified within which the timber was to be cut and removed, it was incumbent upon the defendants to cut and remove the same within a reasonable time from the date of the instrument; and on their failure to do so their interest would cease and determine. *McRae* v. *Stillwell,* 111 *Ga.* 65 (36 S. E. 604, 55 L. R. A. 513); *Goette* v. *Lane,* 111 *Ga.* 400 (36 S. E. 758); *Shippen L. Co.* v. *Gates,* 136 *Ga.* 37 (70 S. E. 672); *Lott* v. *Denton,* supra. What would be a reasonable time for so doing was a question of fact to be decided in the light of all the facts and circumstances of the transaction. *Shippen L. Co.* v. *Gates,* supra. The written instrument involved in this case does not grant to the defendants a mere option to purchase this timber. *Ellis* v. *Bryant,* 120 *Ga.* 890 (48 S. E. 352). So whether this instrument possesses the dignity of a conveyance of this timber to the defendants, whereby title thereto was vested in them, is immaterial in this case, as this writing gives to them an irrevocable right to cut and remove the timber.

2. But it is insisted that this instrument is not binding upon the maker or his assignee, because of lack of mutuality, and because the defendants did not cut and remove this timber within a reasonable time. If there had been originally any want of mutuality, it was cured by the filing of the answer of the defendants to plaintiff's petition, in which answer they set up and assert their right to cut and remove this timber. *Perry* v. *Paschal,* 103 *Ga.* 137 (29 S. E. 703); *Sivell* v. *Hogan,* 119 *Ga.* 168 (46 S. E. 67); *Ellis* v.

*Bryant,* supra. Whether the defendants had delayed an unreasonable time in exercising their right to cut and remove the timber was a question of fact to be decided in the light of all the facts and circumstances of the transaction. *Shippen L. Co.* v. *Gates,* supra. We can not say that the trial judge erred in finding that the defendants had not forfeited their right to cut and remove this timber by their delay, under the facts and circumstances disclosed in the record. The burden was on the plaintiff, who asserted the termination of the defendants' right to cut and remove this timber, to show that the defendants had waited an unreasonable time in exercising this right. We think the trial judge was authorized to find that the plaintiff had not carried this burden.

The defendants introduced evidence to the effect that the maker of this instrument and the defendants agreed that the cutting of this timber should commence when the defendants had cut the timber at their location on Horse Creek, which they were sawing at the date of the execution of this document, and when they were ready to move their sawmill; that the maker stated he did not care when they began to cut it; that the question arose whether this stipulation should be stated in the writing; and that the scrivener, a justice of the peace, whom both parties had selected to draft this instrument, advised them that it was not necessary, in consequence of which advice the stipulation was omitted. In their answer the defendants set up these facts and sought to have the instrument so reformed as to embrace this stipulation. Plaintiff objected to the admission of the above evidence, on the grounds that it added to and varied the written agreement, and that there was no evidence authorizing a finding that there had been a mistake of law or fact on the part of the defendants which would authorize a reformation of the instrument. The court admitted the evidence. In view of the construction we have put on the contract between Parker and the defendants, and of our rulings above as to the right of the defendants to cut and remove the timber, we do not think that reformation of this instrument was necessary for the protection of their rights; and hence we do not think it is necessary to determine whether a case for reformation was made under the pleadings and evidence in the record. Clearly some of the evidence objected to was admissible on the question whether the defendants had forfeited their right to cut and remove the timber by unreason-

able delay; and as the objection was to the evidence as a whole, we do not think it was good when some part of the evidence was competent and admissible.

3. The plaintiff alleges that the contract of January 10, 1922, under which the defendants claim the timber in dispute, was void because at the time of its execution the maker was mentally incapable of transacting business. Assuming that the evidence introduced by the plaintiff on this subject would have authorized the court to grant an injunction, if the same had not been rebutted, the defendants introduced evidence tending to prove that the maker of this contract had sufficient mental capacity to execute the same. Under this evidence, we can not say that the trial judge abused his discretion in refusing to grant an injunction.

*Judgment affirmed. All the Justices concur.*